# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| PEGGY BANKS, individually and on behalf of all others similarly situated, | : : : | CASE NO. 1:25-cv-00851 |
| Plaintiff, | : : | |
| v. | : : | |
| BIO TRUST NUTRITION, LLC | : : | |
| Defendant. | : : / | |

## SCHEDULING ORDER

### 1. DATE OF CONFERENCE
### AND APPEARANCES OF COUNSEL AND PRO SE PARTIES

The conference occurred on June 3, 2025. The following individuals participated:

Plaintiff:

    Andrew Perrong, Esq.
    Perrong Law LLC
    2657 Mount Carmel Avenue
    Glenside, PA 19038
    215-225-5529

Defendant:

    Matthew T. Billeci
    Jones Day
    3161 Michelson Dr., Suite 800
    Irvine, CA 92612
    1.949.553.7542

## 2. STATEMENT OF JURISDICTION

The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law, 47 U.S.C. § 227.

## 3. STATEMENT OF CLAIMS AND DEFENSES

### a. Plaintiff:

Plaintiff Peggy Banks brings this action to enforce the consumer-privacy provisions of the TCPA alleging that the Defendant sent marketing text messages and that they did so and contacted individuals without their prior express written consent. Because these text messages were transmitted using technology capable of generating thousands of similar text messages per day, plaintiff sues on behalf of a proposed nationwide class of other persons who received similar text messages. Defendant claims that the Plaintiff purportedly consented to the text messages. The Plaintiff denies ever having provided any consent, however, and in any such event, any such consent would have been purportedly obtained more than 18 months prior to the text messages at issue, and thus not effectual to constitute an existing business relationship, which expires after 18 months. 47 C.F.R. § 64.1200(f)(5). The order which Plaintiff is alleged to have placed occurred more than 18 months before the Plaintiff received the subject messages.

Moreover, the Plaintiff opposes any attempt at bifurcation, not least of which because the evidence the Defendant has produced informally is insufficient for the Plaintiff or the Court to determine whether or not the Plaintiff ever even checked the box to sign up for text messages as an initial matter or for the Defendant to be able to meet

its affirmative defense of consent on a classwide basis. Bifurcation of discovery is often "counterproductive." MANUAL FOR COMPLEX LITIGATION (FOURTH) ("MCL 4th") § 21.15 (2015). That is readily apparent here. To begin, the proposed bifurcation almost guarantees that the parties will need to duplicate their work and the Defendant can pursue its chosen defenses presented here through discovery. The inevitable disputes about what qualifies as merits vs. class discovery is thus a second reason to deny the request for bifurcation. Indeed, faced with a similar motion, another federal court judge denied a bifurcation request in another TCPA case:

> The Court has reviewed the parties' joint status report [10]. The Court does not see a need to bifurcate discovery in this case. There will be some overlap in discovery here. Discovery as to commonality and typicality under Rule 23 will also apply to the merits of the claim. Moreover, the Supreme Court in Walmart v Dukes has said the district court must conduct a rigorous analysis in determining class certification and that will often require some evaluation about facts that go to the merits of a plaintiff's underlying claims. Thus, bifurcating discovery often does not make sense as the lines between "class discovery" and "merits discovery" are significantly blurred.

See *Katz v. Allied First Bank, SB*, Civil Action No. 22-cv-5277, ECF No. 14 (January 3, 2023).

There is also real risk that the requested bifurcation will prejudice Plaintiff through the loss of evidence held by third parties, such as any third-parties who collected classwide consent information and classwide telephone records. The risk to the putative class members' interests is not merely hypothetical. Multiple decisions have turned on the destruction of telephone records. For example, in *Levitt v. Fax.com*, No. 05-949, 2007 WL 3169078, at *2 (D. Md. May 25, 2007), the court denied class certification in a TCPA fax case because "critical information regarding the identity of those who received the

facsimile transmissions" was not available. Likewise, in *Pasco v. Protus IP Solutions, Inc.*, 826 F. Supp. 2d 825, 831 (D. Md. 2011), the court was compelled to grant the defendant's motion for summary judgment where Mr. Pasco was unable to obtain the "transmission data on which to support their claims that [the defendant] sent them the unsolicited faxes at issue." As a result, courts regularly permit plaintiffs to commence discovery prior to a Fed. R. Civ. P. 26(f) conference related to these issues implicating non-parties in TCPA cases. *See e.g. Abramson v. All American Power and Gas PA, LLC*, Civil Action No. 2:20-cv-1173 (W.D. Pa. September 9, 2020); *Cooley v. Freedom Forever LLC et. al.*, Civil Action No. 2:19-cv-562, ECF No. 37 (D. Nev. July 19, 2019); *Cooley v. First Data Merchant Services, LLC et. al.*, Civil Action No. 19-cv-1185, ECF No. 32 (N.D. Ga. July 8, 2019); *Abante Rooter and Plumbing, Inc. v. Birch Commc'ns, Inc.* Civil Action No. 15-cv-03562, Dkt. No. 32 (N.D. Ga. 2016); *Mey v. Interstate National Dealer Services, Inc., et al.*, Civil Action No. 14-cv-01846, Dkt. No. 23 (N.D. Ga. Aug. 19, 2014). Here, Plaintiff is simply seeking to proceed in the ordinary course with discovery.

b. **Defendant:**

Plaintiff alleges that her residential phone number has been on National Do Not Call ("DNC") Registry since 2006. Compl., ¶¶ 13, 15. Plaintiff's residential phone number is in her "name and she pays the bill from her personal financial accounts." *Id*., ¶ 16. Plaintiff claims that she received 16 text messages from BioTrust starting in 2024. *Id*., ¶¶ 21-22. Plaintiff repeatedly alleges that she "never did business with" BioTrust,

*id*., ¶¶ 20, 28, and thus the text messages were "unwanted" and "nonconsensual." *Id*., ¶¶ 27, 30.

Based on these allegations, Plaintiff asserts a single cause of action alleging that BioTrust violated Section 47 U.S.C. § 227(c) of TCPA by sending unsolicited text messages to individuals with numbers on the DNC list. *Id*., ¶¶ 40-44. She further seeks to represent a nationwide class of all persons "whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing text message or call from or on behalf of Defendant Bio Trust, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial." *Id*., ¶ 33.

Plaintiff's TCPA claim fails because, among other reasons, she consented to the text messages. Indeed, despite her repeated allegations to the contrary, Plaintiff had a relationship with BioTrust. She purchased Keto Elevate™ — Pure C8 MCT Oil Powder for $36.98 and consented to receive text messages from BioTrust when completing that purchase. More specifically, she provided her phone number when filling out the purchase request on the checkout webform and, upon doing so, encountered a disclosure informing her that she agreed to receive text messages by submitting her number. BioTrust's records reflect that Plaintiff remained subscribed to receive text messages until October 24, 2024, when she was unsubscribed from receiving messages. She did not receive any messages from BioTrust after October 24, 2024.

Plaintiff's lawsuit thus arises from a mistaken belief that she did not consent to receive text messages. But she consented to receive text messages when she

completed a purchase on BioTrust's website. Because consent is a complete defense under the TCPA, *Moskowitz v. Am. Sav. Bank, F.S.B.*, 37 F.4th 538, 541 (9th Cir. 2022), BioTrust intends to file an early motion for summary judgment establishing that Plaintiff consented to receive the very messages she complains of. *Smith v. USAA Fed. Sav. Bank*, 2023 WL 5564706 (D. Colo. July 11, 2023).

Moreover, given that consent is a discrete issue that will be dispositive of the case, BioTrust intends to move to bifurcate merits and class discovery in the very near future. Bifurcation is appropriate under these circumstance because it will enable the Court to resolve "several legal issues [that] may dispose of Plaintiffs' individual claims." *Ragsdale v. Harmony Leads, Inc.*, 2025 WL 1617233, at *1 (D. Colo. May 9, 2025) (Prose, J.). As Judge Prose explained in *Ragsdale*, "the theory behind bifurcation is that limiting initial discovery to the individual claims of the named plaintiffs could save the parties and the court the time and resources that would be needlessly consumed by class discovery should the narrow issues on the individual claims prove dispositive." *Id*. Like *Ragsdale*, "there are discrete, narrow issues which may dispose of [Plaintiff's] individual claims," and thus "the most expeditious course is to limit discovery to those individual claims before authorizing discovery on the putative class claims." *Id*. The Court should hold the same here and bifurcate discovery to "save the resources of the parties and the court in the event that Plaintiffs' individual claims are dismissed." *Id*.

   c. **Other Parties:**

None.

### 4. UNDISPUTED FACTS

The following facts are undisputed:

1. The Plaintiff has brought an action alleging violations of the TCPA.

2. Defendant is a limited liability company.

3. Defendant is a resident of this District.

### 5. COMPUTATION OF DAMAGES

a. **Plaintiff:**

Plaintiff's calculations of damages will depend on information received in discovery, including the number of text messages sent to Plaintiff and Class members in violation of the TCPA. Plaintiff and the putative class were damaged because these messages caused them to have to take time from their day to attend to these unsolicited telemarketing texts and used minutes from their phone plans, battery life, storage space, and network bandwidth among other things. Plaintiff seeks the maximum statutory damages under the TCPA for herself and the class.

Specifically, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every call and text in violation of the statute, pursuant to 47 U.S.C. § 227(c)(5). For all knowing and/or willful violations of the TCPA, Plaintiff and Class members are entitled to treble damages of up to $1,500 for each and every call, pursuant to 47 U.S.C. § 227(c)(5). Plaintiff also seeks an injunction prohibiting further conduct in violation of 47 U.S.C. § 227. Plaintiff reserves the right to supplement or

amend these damage computations.

    b.  **Defendant:**

BioTrust does not assert any damages at this time, but reserves the right to do so. BioTrust also denies that Plaintiff or any putative class member is entitled to damages.

### 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

    a.  **Date of Rule 26(f) meeting**

June 3, 2025.

    b.  **Names of each participant and party he/she represented.**

Andrew Perrong (Plaintiff)

Matthew T. Billeci (Defendant)

    c.  **Statement as to when Rule 26(a)(1) disclosures were made or will be made.**

July 8, 2025.

    d.  **Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).**

None.

    e.  **Statement concerning any agreements to conduct informal discovery:**

Plaintiff: None.

Defendant: BioTrust has provided informal discovery to Plaintiff regarding her consent to receive text messages from BioTrust. BioTrust provided a screenshot of the relevant portion of the checkout page that Plaintiff would have encountered when

completing her purchase, which included a disclosure informing Plaintiff that she consented to receive messages by completing the webform. Additionally, at the request of Plaintiff, BioTrust provided Plaintiff's purchase information, including the date and time, product, price, first and last name, shipment address, email, and phone number.

 f. **Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.**

The parties agree to accept service of discovery requests via e-mail. The parties also agree to share all responsive subpoena documents without a formal discovery request.

 g. **Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.**

The parties anticipate that there is likely some electronically stored information at issue, including telephone records and purported consent records. To the extent "extensive" ESI becomes relevant during discovery, the parties will negotiate an ESI protocol.

Defendant BioTrust further notes that "extensive" ESI will most likely be at issue with respect to class-wide discovery or discovery requests that would be impacted if class and merits discovery proceed simultaneously. In the event discovery in this case is bifurcated, "extensive" ESI will not be relevant to Plaintiff's individual claims.

 h. **Statement summarizing the parties' discussions regarding the possibilities for**

**promptly settling or resolving the case.**

The parties certify that they have considered the potential benefits of attempting to settle the case before undertaking significant discovery or motion practice.

Plaintiff: Plaintiff believes that some discovery is required to evaluate the likely outcome of the claim and explore the affirmative defenses lodged in anticipation of a classwide mediation.

Defendant: The parties have a fundamental disagreement on whether Plaintiff consented to receive text messages from BioTrust. Accordingly, as will be set forth in BioTrust's forthcoming motion, discovery should be bifurcated between merits and class discovery to enable the parties to address the issue of consent. Once discovery is taken on that issue, BioTrust believes that mediation may be productive.

### 7. CONSENT

The Parties have not consented to the exercise of jurisdiction of a magistrate judge.

### 8. DISCOVERY LIMITATIONS

**a. Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.**

Plaintiff: Plaintiff does not anticipate serving any more than 25 interrogatories or 10 depositions as provided by the Federal Rules of Civil Procedure.

Defendant: BioTrust intends to move to bifurcate merits and class discovery because "there are discrete, narrow issues which may dispose of [Plaintiff's] individual

claims," and thus "the most expeditious course is to limit discovery to those individual claims before authorizing discovery on the putative class claims." *Ragsdale v. Harmony Leads, Inc.*, 2025 WL 1617233, at *1 (D. Colo. May 9, 2025) (Prose, J.). If such motion is granted, the initial phase of discovery should be limited accordingly in light of the needs of the case, including appropriate limitations on depositions and interrogatories.

**b. Limitations which any party proposes on the length of depositions.**

None, other than what is permitted under the federal rules.

**c. Limitations which any party proposes on the number of requests for production and/or requests for admission.**

Plaintiff: Plaintiff does not anticipate serving any more than 35 requests for production and 50 requests for admission.

Defendant: Plaintiff has already served 27 requests for production and 41 requests for admission on BioTrust, including class-wide discovery requests. BioTrust intends to move to bifurcate merits and class discovery because "there are discrete, narrow issues which may dispose of [Plaintiff's] individual claims," and thus "the most expeditious course is to limit discovery to those individual claims before authorizing discovery on the putative class claims." *Ragsdale v. Harmony Leads, Inc.*, 2025 WL 1617233, at *1 (D. Colo. May 9, 2025) (Prose, J.). If such motion is granted, the initial phase of discovery should be limited accordingly in light of the needs of the case, including appropriate limitations on the number of requests for production and/or

requests for admission.

**d. Deadline for service of Interrogatories, Requests for Production of Documents and/or Admissions.**

Plaintiff: December 15, 2025

Defendant: If the Court grants BioTrust's anticipated motion to bifurcate discovery, *see supra*, then BioTrust proposes that the initial discovery phase be completed by October 3, 2025 or 120 days from the entry of the phase one scheduling order by the Court, whichever is later. If BioTrust files a motion for summary judgment or partial summary judgment following the initial phase of discovery, BioTrust agrees to work with Plaintiff to submit a proposed scheduling order for phase two of bifurcated discovery, if necessary, at the Court's discretion following resolution of such post-phase one motion for summary judgment or partial summary judgment.

**e. Other Planning or Discovery Orders.**

The parties may submit a Proposed Protective Order for the Court's consideration. Plaintiff: (i) Plaintiff's deadline to file his her for class certification is March 4, 2026; (ii) Defendant shall have 48 days from the date Plaintiff files her motion for class certification to oppose the same; and (iii) Plaintiff shall then have 21 days to file a reply in support her motion for class certification.

Plaintiff: The Plaintiff will oppose any protective order limiting discovery to the issue of consent. For much the same reasons as why the Plaintiff opposes birfurcation,

any limited discovery will inevitably result in needless objections and the involvement of the Court in discovery disputes for what constitutes consent-based vis a vis other types of discovery relevant to the Plaintiff's claims, including areas where there are overlap. Defendant: In conjunction with its anticipated motion to bifurcate discovery, *see supra*, BioTrust also intends to seek a related protective order temporarily limiting discovery to topics relevant to resolve the issue of Plaintiff's consent to receiving text messages from BioTrust to conserve resources until the issue of bifurcation is decided by the Court, unless the parties are able to reach agreement on the issue without the need for Court intervention. Moreover, if the Court grants BioTrust's anticipated bifurcation motion, BioTrust agrees to work with Plaintiff to submit a jointly proposed schedule for summary judgment briefing for the Court's approval within fourteen (14) days of such ruling. For these reasons, BioTrust believes that it is premature (and possibly unnecessary) to set a deadline for briefing on a motion for class certification at this time, but agrees to work with Plaintiff to promptly submit a proposed schedule for class certification briefing for the Court's approval should the need arise after the Court's resolution of BioTrust's anticipated post-phase one motion for summary judgment or partial summary judgment.

## 9.  CASE PLAN AND SCHEDULE

a. **Deadline for Joinder of Parties and Amendment of Pleadings.**

   Plaintiff: September 26, 2025

   Defendant: August 1, 2025

b. **Discovery Cut-off.**

   Plaintiff: January 30, 2026

Defendant: If the Court grants BioTrust's anticipated motion to bifurcate discovery, *see supra*, then BioTrust proposes that the initial discovery phase be completed by October 3, 2025 or 120 days from the entry of the phase one scheduling order by the Court, whichever is later. If BioTrust files a motion for summary judgment or partial summary judgment following the initial phase of discovery, BioTrust agrees to work with Plaintiff to submit a proposed scheduling order for phase two of bifurcated discovery, if necessary, at the Court's discretion following resolution of such post-phase one motion for summary judgment or partial summary judgment.

c. **Dispositive Motion Deadline.**

Plaintiff: June 12, 2026

Defendant: If the Court grants BioTrust's anticipated motion to bifurcate merits and class discovery, *see supra*, BioTrust intends to promptly move for summary judgment after completing limited discovery on the issue of Plaintiff's consent to receive the text messages she disputes in this case. Therefore, if BioTrust's anticipated bifurcation motion is granted, BioTrust agrees to work with Plaintiff to submit a jointly proposed schedule for summary judgment briefing for the Court's approval within fourteen (14) days.

d. **Expert Witness Disclosure.**

1. ***The parties shall identify anticipated fields of expert testimony, if any.***

The Plaintiff anticipates using expert testimony to identify putative class members. If required, the Defendant anticipates using expert testimony to rebut Plaintiff's

experts.

> **2. Limitations which the parties propose on the use or number of expert witnesses.**

None.

> **3. The parties shall designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before**

Plaintiff: <u>January 30, 2026</u>.

Defendant: In conjunction with its anticipated motion to bifurcate discovery, *see supra*, BioTrust also intends to seek a related protective order temporarily limiting discovery to topics relevant to resolve the issue of Plaintiff's consent to receiving text messages from BioTrust to conserve resources until the issue of bifurcation is decided by the Court, unless the parties are able to reach agreement on the issue without the need for Court intervention. Moreover, if the Court grants BioTrust's anticipated bifurcation motion, BioTrust agrees to work with Plaintiff to submit a jointly proposed schedule for summary judgment briefing for the Court's approval within fourteen (14) days of such ruling.  For these reasons, BioTrust believes that it is premature (and possibly unnecessary) to set deadlines for expert discovery at this time, but agrees to work with Plaintiff to promptly submit a proposed schedule for

expert discovery for the Court's approval should the need arise after the Court's resolution of BioTrust's anticipated post-phase one motion for summary judgment or partial summary judgment.

4. ***The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before***

Plaintiff: <u>February 27, 2026</u>.

Defendant: In conjunction with its anticipated motion to bifurcate discovery, *see supra*, BioTrust also intends to seek a related protective order temporarily limiting discovery to topics relevant to resolve the issue of Plaintiff's consent to receiving text messages from BioTrust to conserve resources until the issue of bifurcation is decided by the Court, unless the parties are able to reach agreement on the issue without the need for Court intervention. Moreover, if the Court grants BioTrust's anticipated bifurcation motion, BioTrust agrees to work with Plaintiff to submit a jointly proposed schedule for summary judgment briefing for the Court's approval within fourteen (14) days of such ruling. For these reasons, BioTrust believes that it is premature (and possibly unnecessary) to set a deadline for expert discovery at this time, but agrees to work with Plaintiff to promptly submit a proposed schedule for expert discovery for the Court's approval should the need arise after the Court's resolution of BioTrust's anticipated post-phase one motion for summary judgment or partial summary judgment. BioTrust further notes that should the need for expert

testimony arise in this case, that the deadline between disclosures of (i) initial experts and (ii) rebuttal experts should be at least 6-8 weeks.

**i. Identification of Persons to Be Deposed:**

The parties expect that the following persons will need to be deposed. This list is not intended to be exhaustive or to limit the number or identity of necessary deponents.

- Peggy Banks
- 30(b)(6) Witness of Defendant
- Any expert endorsed by either party.

## 10.  DATES FOR FURTHER CONFERENCES

**a. Status conferences will be held in this case at the following dates and times:**

_____. 20\_\_ at \_\_\_ o'clock \_\_\_\_m.

**b. A final pretrial conference will be held at the following date and time:**

_____. 20\_\_ at \_\_\_ o'clock \_\_\_\_m.

A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

## 11.  OTHER SCHEDULING MATTERS

**a. Identify those discovery or scheduling issues, if any, on which counsel after a good**

**faith effort, were unable to reach an agreement.**

Plaintiff: For the reasons stated above, the parties disagree on the timing of discovery, the necessity of birfurcation, as well as the necessity of a protective order.

Defendant: BioTrust will promptly meet and confer with Plaintiff's counsel to discuss potential resolution without the need for Court intervention on the issue of (1) bifurcating merits and class discovery and, if necessary, the need for BioTrust to (2) seek a protective order temporarily limiting discovery to topics relevant to resolve the issue of Plaintiff's consent to receiving text messages from BioTrust to conserve resources until the issue of bifurcation is decided by the Court.

b. **Anticipated length of trial and whether trial is to the court or jury.**

The Plaintiff has made a demand for trial by jury. The Parties believe that the trial will take 5 days.

c. **Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building, , La Plata County Courthouse 1060 E. 2nd Avenue, Suite 150, Durango, Colorado 81301.**

None. Counsel for Plaintiff and Defendant are both located out of state and would prefer Zoom or telephonic appearances when practicable.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with

D.C.COLO.LCivR 6.1(c) by serving the motion contemporaneously upon the moving attorney's client.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a), the Uniform Civil Practice Standards for Magistrate Judges, and any additional Order of the assigned Magistrate Judge regarding discovery dispute procedures [if any].

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

### 13.  AMENDMENTS TO SCHEDULING ORDER

This scheduling order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado, this ___ day of _____, 20<u>25</u>.

BY THE COURT:

_____

APPROVED AS SUBMITTED ON