IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:25-cv-00851-GPG

PEGGY BANKS, individually and on
behalf of all others similarly situated,

        Plaintiff,

v.

BIO TRUST NUTRITION, LLC,

        Defendant.

**DEFENDANT BIOTRUST NUTRITION, LLC'S REPLY IN SUPPORT OF MOTIONS
TO BIFURCATE DISCOVERY AND FOR PROTECTIVE ORDER**

## INTRODUCTION

When stripped down to its essence, Plaintiff's Opposition Brief ("Opp.") confirms why the Court should grant BioTrust's well-taken motions to bifurcate discovery and for a protective order. *See* ECF Nos. 14-15. She concedes that the key issue is whether she provided her telephone number and flipped the conspicuous "Yes! Keep me up to date" toggle when she completed her September 2020 purchase. And if she did, her consent is a complete defense to every theory she asserts and will end the litigation before Rule 23 ever comes into play. *See, e.g.*, *Moskowitz v. Am. Sav. Bank, F.S.B.*, 37 F.4th 538, 541 (9th Cir. 2022); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1113 (11th Cir. 2014).

Plaintiff's main argument is that she does not *remember* opting in. But her lapse in memory does not foreclose consent, and the Opposition offers nothing beyond speculation about "win-back campaigns" and "loading errors" to suggest BioTrust's records are inaccurate. This factual dispute only underscores why limited, plaintiff-specific discovery on the threshold issue of her consent should be resolved first.

Because the operative question is so narrow, efficiency and proportionality demand that

discovery proceed in two phases to "save the parties and the court the time and resources that would be needlessly consumed by class discovery should the narrow issues on the individual claims prove dispositive." *Ragsdale v. Harmony Leads, Inc.*, 2025 WL 1617233, at *3 (D. Colo. May 9, 2025). A first phase focused on Plaintiff's individualized transaction can be completed through targeted discovery. If that inquiry establishes consent, the case ends without ever burdening the parties or the Court with expensive class discovery. If not, broader discovery can follow without prejudice. Courts routinely endorse exactly this sequencing in TCPA class actions when a "narrow and potentially dispositive issue" can be decided up front. *Fania v. Kin Insurance*, 2024 WL 2607303, at *2 (E.D. Mich. May 24, 2024).

By contrast, plunging into class discovery now would force BioTrust to harvest and review potentially millions of data points, expose non-party customer information, and litigate proportionality disputes that may be rendered moot if the Court confirms that Plaintiff consented and dismisses her claims. The Opposition acknowledges the primacy of the consent question and highlights the inefficiencies of immediate class discovery, confirming why bifurcation and the requested protective order are warranted.

## ARGUMENT

### I.  PLAINTIFF CONCEDES THE EXISTENCE OF A DISPOSITIVE ISSUE

Plaintiff's attack on bifurcation and a protective order rests on the self-serving premise that she never consented to BioTrust's texts. Opp. at 1-2. From that she spins a sweeping narrative: BioTrust, she speculates, supposedly swapped platforms, dumped customer lists, and lost or ignored opt-in data, blasting unlawful messages to a whole class of unsuspecting former customers who are on the "do not call" list. *Id.* That story is viable if (and only if) the "no-consent" premise is true, because she needs it to justify broad discovery into every corner of BioTrust's operations and to claim that individual and class issues are entwined. *Id.*

But Plaintiff's assumption is the *very issue* bifurcation is designed to resolve first. If BioTrust provides legally sufficient evidence that she clicked the "Yes! Keep me up to date" toggle, her case ends, and class issues vanish. If not, only then does it make sense to explore

whether BioTrust marketed to any other customer(s) without their consent. Either way, class-wide discovery now is premature.

Plaintiff's brief underscores this point. By insisting she "didn't check anything," she concedes the existence of a factual dispute unique to her transaction—an individualized issue that does not require far-flung class discovery to answer. *Compare* Opp. at 3 *with* Rosin Decl., ¶ 3; *see also Harris v. Shore Funding Sols., Inc.*, 2023 WL 3440077, at *3 (E.D.N.Y. Apr. 21, 2023) ("Defendant's proposed discovery would involve Plaintiff's cellphone records, Defendant's call records for April 19, 2022, and other categories that do not specifically relate to the larger proposed class of individuals who received calls within the four years predating the complaint."); *Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc.*, 2014 WL 413534, at *4 (D.N.J. Feb. 4, 2014) (finding the issue of whether the faxes sent to Plaintiff were actionable under the TCPA to be totally distinct from class issues). This conclusion is consistent with many other courts that have declined to certify TCPA classes under Rule 23 on the grounds that common issues do not predominate over individualized questions of consent.[1]

While class issues are not yet before the Court, Plaintiff cannot transform her single-consumer dispute into a fishing expedition of all of BioTrust's customer records, vendor files, and marketing campaigns. The threshold, dispositive issue of Plaintiff's consent must be the initial focal point. *See Ragsdale*, 2025 WL 1617233, at *2 ("the court concludes that the most expeditious course is to limit discovery to those individual claims before authorizing discovery on the putative class claims."). And *Ragsdale* is certainly not alone: many other courts have found that bifurcation and limited initial discovery is the correct course where, as here, a dispositive threshold issue is unresolved. *See* Motion to Bifurcate, ECF No. 14 at 5-8 (collecting cases).

---

[1] *Gene and Gene LLC v. BioPay, LLC*, 541 F.3d 318, 328-29 (5th Cir. Aug. 14, 2008) ("there is no class-wide proof available to decide consent and only mini-trials can determine this issue"); *Ginwright v. Exeter Fin. Grp.*, 280 F. Supp. 3d 674, 687 (D. Md. Nov. 28, 2017) (holding that alleged TCPA violation was "not a common issue across the class because resolution of that question for a particular class member likely depends on the circumstances surrounding the individual class member's consent, or lack of consent, to receive autodialed calls from [Defendant]"); *Ung v. Universal Acceptance Corp.*, 319 F.R.D. 537, 543 (D. Minn. 2017) (finding a lack of predominance where "consent is too individualized an inquiry, overwhelming any questions common to the class"); *Espejo v. Santander Consumer USA, Inc.*, 2016 WL 6037625, at *9–10 (N.D. Ill. Oct. 14, 2016) (similar); *Blair v. CBE Grp., Inc.*, 309 F.R.D. 621, 631 (S.D. Cal. 2015) (similar); *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (similar).

## II.   THIS CASE FALLS SQUARELY WITHIN *RAGSDALE*

In fact, *Ragsdale* is directly on point with this case. There, as here, the defendant asked the court to tackle a "discrete, narrow" and "clear cut" question of individual consent before launching into sprawling class discovery. Opp. at 18, 20. This Court agreed, reasoning that resolving a "pure individualized issue of consent" at the outset would "save the parties and the court the time and resources that would be needlessly consumed by class discovery." 2025 WL 1617233, at *2.

The same logic applies here. Plaintiff's Opposition offers only "weakly controverted" recollections—i.e., she does not remember opting in—while BioTrust's contemporaneous business records point in the opposite direction. Opp. at 19. Nothing in Plaintiff's brief explains why BioTrust's declaration carries any less weight than the nearly identical proofs that the defendant provided in *Ragsdale*. *See* No. 24-cv-02510, Dkt. 23-1 (D. Colo.).

Plaintiff's insistence that the Court jump immediately into class issues flips *Ragsdale* on its head. The purpose of bifurcation is to test whether Plaintiff's individual claim survives before burdening either side with potentially nationwide discovery. Under Plaintiff's logic, the mere lodging of class allegations would automatically defeat bifurcation in TCPA cases—a position *Ragsdale* and the many cases cited in BioTrust's opening brief flatly reject. *See* Motion to Bifurcate at 5-8.

Indeed, *Ragsdale* instructs that the "core class issue" (*see* Opp. at 19) does not even come into view "until the court has determined that Plaintiffs' individual claims have sufficient merit to move forward." 2025 WL 1617233, at *1. Plaintiff's lack of memory as to whether she provided consent and alternate hypotheses as to what *might* have happened do nothing to alter the fact that the first issue that should be addressed is whether or not this complete defense to her claims would end this lawsuit. *Id.* at *3. This case fits *Ragsdale* to a tee, and the Court should follow the same efficient path.

## III.  PLAINTIFF'S ATTEMPT TO REPUDIATE HER CONSENT IS INSUFFICIENT

Although Plaintiff vehemently contends in her brief that she "didn't check anything" and that "she did not consent" *Id.* at 3, 6, her sworn declaration clarifies that, in reality, she has "no

recollection of checking that box." Declaration of Plaintiff, ECF No. 23-1 ("Banks Decl."), ¶ 9. Her proposition that a lack of memory is enough to invalidate her consent is "unpersuasive." *Martinez v. Capstone Restaurant Grp., LLC*, 2021 WL 1723776, at *3 (D. Colo. Mar. 31, 2021); *see also Petrie v. GoSmith, Inc.*, 360 F. Supp. 3d 1159, 1162 (D. Colo. 2019 (citing *Stein v. Burt-Kuni One, LLC*, 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005)) ("general denials and statements that a user does not recall visiting a website" cannot rebut the existence of agreement); *Beattie v. TTEC Healthcare Sols., Inc.*, 2019 WL 2189481, at *2 (D. Colo. May 21, 2019) ("Plaintiffs offer only speculative arguments and their lack of recall. This is not enough to raise a genuine dispute about the existence of the arbitration agreement."); *Frazier v. Western Union Co.*, 377 F. Supp. 3d 1248, 1260 (D. Colo. Mar. 27, 2019) ("The fact that Plaintiffs . . . do not specifically recall whether they signed receipts or Send Money Forms is also not material to this inquiry."); *Kelly v. Madwire LLC*, 2024 WL 5055581, at *3 (D. Colo. Oct. 4, 2024) (similar).

Plaintiff offers no authority excusing a party from a contract it simply does not recall. Instead, she attempts to discredit BioTrust's evidence, which she reduces to "rank speculation." Opp. at 3. But Plaintiff does not contest or challenge any of the individualized facts in Mr. Rosin's declaration. *See* Rosin Decl., ¶¶ 2-3. Nor does she deny that she ever bought products from BioTrust, only that she presently has "no record of placing the subject order."  Banks Decl., ¶ 7. Still, she insists that BioTrust has no "admissible evidence in its motion tending to show that the Plaintiff actually checked the box on the order form, or even what the terms and conditions attendant to that checked box were." Opp. at 16.

As an initial matter, Plaintiff's complaint about the sufficiency of BioTrust's evidence is premature. The entire point of bifurcation is to afford the parties an opportunity to conduct discovery and ascertain the evidence each side possesses to support or refute Plaintiff's consent. BioTrust is not required to put forth infallible, fully admissible, or even all its evidence at this stage. *Ragsdale*, 2025 WL 1617233, at *2 (observing that the "[t]he theory behind bifurcation" is to avoid burdensome class discovery "*should the narrow issues on the individual claims prove dispositive*") (emphasis added). The first phase of bifurcated discovery is meant to focus on

exchanging evidence about consent and addressing any objections to it.

Even so, to the extent Plaintiff argues that BioTrust cannot use a corporate declarant's explanation of checkout process on BioTrust's website, this Court rejected a virtually identical argument just last year. *McGuire v. CarMax Bus. Servs. LLC*, 2024 WL 3897073, at *15 (D. Colo. Aug. 16, 2024) (Prose, J.), *report and recommendation adopted*, 2024 WL 4027964 (D. Colo. Sept. 3, 2024) (explaining that declarant's "position with [Defendant], the nature of his job duties, his familiarity with the [website] enrollment process, and the information and records available to him . . is sufficient to show that he is qualified to offer his declaration" pursuant to Fed. R. Evid. 803(6)). Like in *McGuire*, Mr. Rosin's declaration is admissible because it is based on business records that were "(A) made around the time of the events at issue, (B) kept in the course of a regularly conducted business activity, and (C) made as a regular practice of that activity," and is authenticated by "the testimony of the custodian or another qualified witness[.]" *Id.*[2]

On the other side, Plaintiff has not "show[n] that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E). She complains that "[w]hat a person 'would have encountered' or what they would have seen is not evidence of what they *actually* did or *actually* submitted on a website." Opp. at 3 (emphasis in original). That, too, is not enough to discard Mr. Rosin's declaration out of hand. *Petrie*, 360 F. Supp. 3d at 1163 ("Defendant's position is supported by data it routinely collects."); *Beattie*, 2019 WL 2189481, at *2 ("Defendants' contention that Plaintiffs . . . manifested their assent to the arbitration agreement by clicking the 'Accept' button is supported by employee data they routinely collect and maintain."); *Vernon v. Qwest Comm'ns Intern. Inc.*, 857 F. Supp. 2d 1135, 1151 (D. Colo. 2012) ("Defendants have offered evidence describing their routine practice [which is] ... sufficient to establish a *prima facie* showing."); *United States v. Penn*, 2021 WL 4943647, at *3 (D. Colo. Oct. 22, 2021) (rejecting argument that a records custodian can only testify as to

---

[2] Even the FCC recognizes that when a consumer disputes their consent to receiving solicitations, the sending party is ordinarily "in the best position to have records kept in the usual course of business showing such consent." *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 565 ¶ 10, 2008 WL 65485 (Jan. 4, 2008).

documents he or she has first-hand knowledge of) (citing *In re Kim*, 809 F. App'x 527, 540 (10th Cir. 2020) ("[T]he 'custodian or other qualified witness need not have personal knowledge regarding the creation of the document offered, or personally participate in its creation, or even know who actually recorded the information.'") (quotation omitted)).

As a fallback, Plaintiff advances two alternative theories about why her consent is "implausible": a "win-back" campaign or a mass upload of customer data. *Id.* at 3-4. She then cites cases where companies contacted former customers outside the permissible window for an "established business relationship." *Id.* at 5. But these contentions are irrelevant to the central question of whether Plaintiff consented to text messages from BioTrust in the first place. *E.g.*, *Moskowitz*, 37 F.4th at 541; *Van Patten*, 847 F.3d at 1044; *Mais*, 768 F.3d at 1113. At bottom, Plaintiff's repudiation is built on faded memory and speculation, which does not justify her request for immediate class-wide discovery.

## IV. CLASS-WIDE DISCOVERY IS PREMATURE AND INEFFICIENT UNTIL THE THRESHOLD CONSENT ISSUE IS RESOLVED

Because class-wide discovery is improper at this stage of the case, bifurcation is not the least bit "counterproductive." Opp. at 6-7. Plaintiff insists there is "no indication that [BioTrust] gathered telephone numbers in a materially different way than it gathered the Plaintiff's." Opp. at 10. But Mr. Rosin's declaration details a path through BioTrust's checkout flow that was unique to Plaintiff. *See* Rosin Decl., ¶¶ 2-3. This individualized record directly refutes the notion that BioTrust harvested every customer's phone number the same way. Thus, unlike *Grippo*, the threshold question of Plaintiff's consent is unrelated to a "wider endeavor that will likely bleed into class discovery." *Grippo v. Sugared + Bronzed, LLC*, 2025 WL 596095, at *3 (C.D. Cal. Feb. 24, 2025) (cited at Opp. 10).

The evidence needed to test Plaintiff's consent—for example, her checkout record, the website flow, and opt-in or opt-out activity—is self-contained. It bears little resemblance to the expansive class discovery she seeks, which would force BioTrust to marshal customer purchase and consent records over a multi-year period, communications and data uploads involving

numerous individuals, evidence regarding systemic practices or policies, and then litigate privilege, privacy, and proportionality fights that may never matter. *See Harris*, 2023 WL 3440077, at *3; *Janssen*, 2014 WL 413534, at *4; *cf. Ahmed v. HSBC Bank USA, N.A.*, 2018 WL 501413, at *3 (C.D. Cal. Jan. 5, 2018) (distinguishing cases where defendants never showed consent was at issue). For similar reasons, the "overlap" and "enmeshing" Plaintiff predicts are illusory. Opp. at 8. So too is her objection that proceeding with limited discovery would require Plaintiff to "start all over again" if BioTrust's anticipated dispositive motion is denied. *Id.* at 7. Evidence of Plaintiff's consent does not require examination of BioTrust's general practices, policies, or the experiences of all other customers. *E.g.*, *Harris*, 2023 WL 3440077, at *3; *Janssen*, 2014 WL 413534, at *4.

None of Plaintiff's other cited authorities compel a different result. *See* Opp. at 7-8. Unlike BioTrust, the defendant in *Hartley* asked for bifurcation without submitting any factual corroboration regarding that plaintiff's individual consent, relying instead on a possibility that the issue *may* exist. *See Hartley-Culp v. Credit Mgmt. Co.*, No. 14-cv-0282, Dkts. 24, 29 (W.D. Pa.). *EQT* was a breach of contract case, not a TCPA case, where defendant sought to limit the first phase of discovery to spoliation, liability, and damages. *See EQT Prod. Co. v. Terra Servs., LLC*, No. 14-cv-1053, Dkt. 25 (W.D. Pa.). Likewise, in *Charvat*, *Katz*, *Nock*, *Blair*, and *Bond*, the defendants seeking bifurcation either did not specifically argue or provide concrete evidence that the plaintiffs' consent was genuinely at issue. *See* Opp. at 9-12. And *Lakeland* and *In re Plastics* were antitrust cases, not TCPA cases, decided on entirely different records. *Id.* at 9-10.

Finally, limiting discovery in the first phase is both efficient and fair. It "balances the twin considerations of allowing Plaintiffs' lawsuit to proceed to discovery while doing so in the most efficient way for all parties." Motion to Bifurcate at 7-8 (citing *Boulter v. Noble Energy, Inc.*, 2020 WL 13568320, at *4 (D. Colo. Nov. 16, 2020)); *see also Newell v. Aliera Healthcare, Inc.*, 2020 WL 13568762, at *3 (N.D. Ga. Apr. 6, 2020) (brief delay outweighed by savings from avoiding unnecessary class discovery). Plaintiff retains access to the discovery she needs to test the issue of consent as to her own claim. What she cannot do is impose the enormous cost of class discovery

before this Court knows whether a class action will ever be necessary.

## V.  BIOTRUST'S PROPOSED PROTECTIVE ORDER IS JUSTIFIED

The categories of discovery needed to decide the consent issue are simple and discrete: (1) Plaintiff's transaction history, (2) the checkout process on BioTrust's website, and (3) records showing whether she opted in or out. *See* Motion for Protective Order at 1-2. Everything else Plaintiff wants—customer records, policies, complaints, and extensive information about BioTrust's vendors and systems—is irrelevant unless her individual claim survives. *Id.* at 5; *see also Kemen v. Cincinnati Bell Telephone Co., LLC*, 2024 WL 3633333, at *3 (S.D. Ohio Aug. 2, 2024) (limiting first phase of discovery to "threshold issues that both require little discovery and could be dispositive of [Plaintiff's] individual claim").

Plaintiff leans heavily on the *String Cheese* factors to oppose a protective order, but when those factors are applied correctly, they favor BioTrust. *See* Opp. at 13-18 (citing *String Cheese Incident, LLC v. Stylus Shows, Inc.*, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006)). To begin with, BioTrust is not asking for the blanket stays denied in Plaintiff's cited cases, such as a request to shut down discovery pending an appeal, rule-making, or dispositive motions. *See* Opp. at 12, 16-18 (citing *Aspen Corp., Inc. v. Gorman*, 2019 WL 266313, at *1 (D. Colo. Jan. 18, 2019); *Bustos v. United States*, 257 F.R.D. 617, 623 (D. Colo. 2009); *Sanaah v. Howell*, 2009 WL 980383, at *1 (D. Colo. Apr. 9, 2009); *Saleh v. Crunch, Ltd. Liab. Co.*, 2018 WL 11264884, at *1 (S.D. Fla. Feb. 28, 2018); *Lathrop v. Uber Techs., Inc.*, 2016 WL 97511, at *1 (N.D. Cal. Jan. 8, 2016); and *Simon v. Ultimate Fitness Grp., LLC*, 2019 WL 4382204, at *1-2 (S.D.N.Y. Aug. 19, 2019)); *see also id.* at 17 (citing various motions to say during pendency of Rule 12 motions).[3]

Rather, BioTrust seeks a tailored protective order letting the parties take the discovery that actually matters on the threshold issue. Courts routinely approve that approach in TCPA cases, holding that "any prejudice to Plaintiff is significantly outweighed" by the cost of premature class discovery. *Newell*, 2020 WL 13568762, at *3; *Harris*, 2023 WL 3440077, at *5 ("granting

---

[3] Plaintiff's additional citation to *Sebastian v. Greenlink Int'l Inc.* is misplaced because in that case, "[n]o stay of discovery was either requested or entered." No. 20-cv-01788-RM-NRN, 2021 WL 5867121, at *1 (D. Colo. Dec. 10, 2021). *See* Opp. 12-13.

Defendant's motion will not cause undue burden and expense to Plaintiff nor would it prejudice Plaintiff because this case is in the nascent stages."). Plaintiff will still receive everything she needs on this issue of consent. Broader discovery opens only if she can manage to clear the consent hurdle.

Plaintiffs' spoliation concerns are pure conjecture. Opp. at 16-17. Courts have found those fears unpersuasive because document preservation duties and targeted subpoenas provide effective mechanisms to ensure that evidence is not lost while broader discovery is limited. *See* Motion for Protective Order at 6-7 (citing *Newell*, *Janssen*, *Akselrod*, *Deleon*). Those safeguards are more than sufficient here, especially since Plaintiff has not even attempted to explain how "the destruction of records" is an imminent risk. Opp. at 17.[4]

The burden of premature class discovery is also lopsided against BioTrust. *Harris*, 2023 WL 3440077, at *4 (observing that costs of discovery "can be particularly unforgiving for defendants"); *Osidi v. Assurance IQ, LLC*, 2022 WL 623733, at *2 (D. Mass. Mar. 3, 2022) ("it would be prudent to test the merits of Plaintiff's allegations before engaging in costly class discovery.") (cleaned up); *Katz v. Liberty Power Corp., LLC*, 2019 WL 957129, *1 (D. Mass. Feb. 27, 2019) ("Controlling the scope of discovery is particularly appropriate where discovery will impose considerable expense and the claims may be resolved on issues that require only limited or targeted discovery."). Plaintiff wants BioTrust to comb all its databases, disclose all its policies, and marshal testimony from employees, third parties, and experts—all before the Court knows whether her individual case can proceed. *See* Motion for Protective Order at 5, 7; Opp. at 7. Imposing that kind of burden does not make sense before the much narrower, dispositive question is resolved. *E.g.*, *Ragsdale*, 2025 WL 1617233, at *2.

Limiting discovery to the issue of consent is also more convenient for the Court and serves

---

[4] To that end, Plaintiff's cited authorities do not lend credence to her spoliation concern either. In *Levitt*, the court decertified a TCPA class not due to a finding that evidence had actually been destroyed, as Plaintiff suggests, but rather because the "source of critical information" was "no longer actively participating in the litigation." *See Levitt v. Fax.com*, 2007 WL 3169078, at *2 (D. Md. May 25, 2007). And in *Pasco*, the plaintiff lost summary judgment because it did not procure "transmission data" that was available but withheld from production because plaintiff "never sought the requisite Canadian court order" as required by Canadian law. *Pasco v. Protus IP Sols., Inc.*, 826 F. Supp. 2d 825, 831 (D. Md. Nov. 23, 2011). Neither decision specifically addressed "the destruction of records necessary to identify class members." Opp. at 17.

the public interest by promoting a just, efficient, and speedy resolution in line with the Federal Rules of Civil Procedure. *E.g.*, *Fania*, 2024 WL 2607303, at *4 ("requiring the parties to continue down the path of Plaintiff specific discovery . . . is the most efficient way to assure an expeditious resolution to this case. And it is the most efficient use of the Court's resources."). The Court can address the dispositive consent issue on a focused record, without being drawn into managing broad, complex, and potentially unnecessary class discovery. Motion for Protective Order at 7.

Plaintiff's broad discovery requests would also prematurely require the production of personal information about nonparties—the very people whose interests Rule 23 seeks to protect. As discussed, Plaintiff's attempt to conflate her individual claim with class issues is misplaced. *See supra* at 7-8. Only if Plaintiff's individual claim survives should the Court and the parties expend resources on exploring broader class issues. This is consistent with the approach taken by courts in similar cases. *E.g.*, *Fania*, 2024 WL 2607303, at *2-3; *Harris*, 2023 WL 3440077, at *4.

Simply put, BioTrust's proposed discovery structure aligns with established TCPA precedent, including *Ragsdale*. Plaintiff's professed memory lapse, buttressed only by hypothetical "win-back campaigns" and "loading errors," confirms the necessity of resolving the threshold consent question first without squandering resources, exposing sensitive customer data, and spawning disputes rendered moot if consent is established. That is precisely the inefficiency that phased discovery is designed to avoid and why the protective order BioTrust proposes should enter here.

## CONCLUSION

For these reasons, the Court should grant BioTrust's motion to bifurcate discovery and for a protective order, limit initial discovery to the issue of Plaintiff's consent to receive the complained-of text messages and enter an order granting BioTrust's requested relief set forth in BioTrust's proposed orders.

Dated: August 1, 2025

JONES DAY

By: *s/ TJ Herron*
    TJ Herron
    therron@jonesday.com
    3161 Michelson Drive, Suite 800
    Irvine, CA  92612
    Telephone:   +1.949.851.3939
    Facsimile:   +1.949.553.7539

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of August, 2025, I have caused a true and correct copy of the foregoing **DEFENDANT BIOTRUST NUTRITION, LLC'S REPLY IN SUPPORT OF MOTIONS TO BIFURCATE DISCOVERY AND FOR PROTECTIVE ORDER** to be served with the Court via the CM/ECF system, which shall serve the same on the following:

Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

*Attorneys for Plaintiff*

                                                   */s/ TJ Herron*
                                                   TJ Herron

                                                 *Attorneys for Defendant*