IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-00851-GPG-SBP

PEGGY BANKS, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

BIO TRUST NUTRITION, LLC,

    Defendant.

---

**ORDER**

---

**Susan Prose, United States Magistrate Judge**

    This matter is before the court on Defendant Bio Trust Nutrition, LLC's ("BioTrust") Motion to Bifurcate Discovery (ECF No. 14) and BioTrust's Motion for Protective Order Limiting Discovery to Threshold Issues Relating to Plaintiff's Individual Claims (ECF No. 15) (collectively, the "Motions"). Plaintiff filed a response brief opposing both Motions. ECF No. 23. BioTrust filed a reply. ECF No. 24. The Motions were referred to the undersigned United States Magistrate Judge by memoranda entered June 30, 2025. *See* ECF Nos. 17, 18; *see also* Order Referring Case, ECF No. 5.[1]

    Having reviewed the Motions, the briefing, and the entire record, the court respectfully **GRANTS** the Motion to Bifurcate Discovery (ECF No. 14) and **GRANTS IN PART** the Motion for Protective Order (ECF No. 15), as set forth below.

---

[1] The court issues this non-dispositive discovery Order pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a).

I. BACKGROUND

Plaintiff filed this putative class action on March 15, 2025, asserting a single claim under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c), and its implementing regulations, 47 C.F.R. § 64.1200(c)(2). ECF No. 1. The TCPA and its regulations prohibit telemarketing calls to residential telephone numbers registered on the National Do-Not-Call Registry. *See* 47 C.F.R. § 64.1200(c)(2).

Plaintiff alleges that BioTrust initiated multiple telemarketing text messages to her cellular telephone number, which she asserts has been listed on the National Do-Not-Call Registry since 2006 and is used for residential purposes. ECF No. 1 ¶¶ 14–18, 21–22. Plaintiff alleges that she did not consent to receive these communications and that she never did business with BioTrust. *Id*. ¶¶ 19–20, 27–28.

BioTrust disputes Plaintiff's allegations. It asserts that Plaintiff purchased a product from BioTrust's website on September 28, 2020—specifically, Keto Elevate™ — Pure C8 MCT Oil Powder. ECF No. 14-1 ¶ 2. According to BioTrust, during the checkout process Plaintiff provided her telephone number (ending in -5370) and affirmatively opted in to receive marketing text messages by activating a disclosure stating: "Yes! Keep me up to date on news and exclusive offers via text messages from Biotrust.com." *Id*. ¶¶ 2–3. BioTrust represents that the opt-in toggle was not pre-selected and required manual activation by the user. *Id*. ¶ 3. BioTrust further represents that it has produced contemporaneous purchase records, checkout-page representations, and opt-in data reflecting Plaintiff's alleged consent. *Id*. ¶¶ 2–4.

Based on this asserted transaction and opt-in, BioTrust contends that Plaintiff provided prior express consent and/or had an established business relationship with BioTrust, which

2

BioTrust asserts is a complete defense to Plaintiff's TCPA claim. *See* ECF No. 14 at 1–2; *see also* 47 C.F.R. § 64.1200(c)(2)(ii).

BioTrust has moved to bifurcate discovery pursuant to Federal Rule of Civil Procedure 42(b), requesting that discovery proceed in two phases. ECF No. 14. BioTrust proposes that the discovery in the first phase be limited to Plaintiff's individual transaction history, alleged consent or established business relationship, and the merits of her individual claim, with class-related discovery deferred unless Plaintiff's individual claim survives. *Id*. BioTrust also seeks a protective order under Rule 26(c) staying class discovery pending completion of the first phase of discovery. ECF No. 15.

Plaintiff opposes bifurcation and the requested protective order. ECF No. 23. She asserts that she does not recall providing consent, that the challenged text messages began long after her alleged purchase, and that the timing of the messages suggests a "win-back" campaign or systemic mishandling of data rather than an individualized consent-based communication. *Id*. at 3–7. Plaintiff further contends that individual and class issues substantially overlap, rendering bifurcation inefficient and prejudicial. *Id*. at 8–14.

### II.   LEGAL STANDARDS

#### A. Bifurcation of Discovery

In considering whether to bifurcate discovery in a putative class action, courts look to Federal Rules of Civil Procedure 23 and 42(b). *Klassen v. SolidQuote LLC*, No. 23-cv-00318-GPG-NRN, 2023 WL 5497865, at *2 (D. Colo. Aug. 23, 2023). Rule 42(b) provides a trial court with wide discretion to bifurcate proceedings "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). When considering whether to bifurcate class

3

discovery from discovery on a plaintiff's individual claims, courts may consider "(1) the overlap between individual and class discovery, (2) whether bifurcation will promote Federal Rule of Civil Procedure 23's requirement that certification be decided at 'an early practicable time,' (3) judicial economy, and (4) any prejudice likely to flow from the grant or denial of a stay of class discovery." *Klassen*, 2023 WL 5497865, at *2 (quoting *Pavelka v. Paul Moss Ins. Agency, LLC*, No. 1:22-cv-02226, 2023 WL 3728199, at *2 (N.D. Ohio May 30, 2023)). Bifurcation under Rule 42 is not "the norm or even a common occurrence." *Bonham v. GEICO Cas. Co.*, No. 15-cv-02109-MEH, 2016 WL 26513, at *1 (D. Colo. Jan. 4, 2016) (quoting *The Marianist Province of the United States, Inc. v. Ace USA*, 08-cv-01760-WYD-MEH, 2010 WL 2681760, at *1 (D. Colo. July 2, 2010) (citing Fed. R. Civ. P. 42(b) advisory committee's notes to 1966 amendment (noting that bifurcation should not be routinely ordered)).

However, in the context of TCPA putative class actions, courts have bifurcated discovery where doing so promotes efficiency. *See, e.g.*, *Sapan v. Fin. of Am. Reverse LLC*, No. 8:24-cv-01213-FWS-KES, 2025 WL 1932935, at *3 (C.D. Cal. July 14, 2025); *Moore v. Demand Science Grp., LLC*, No. 1:22-cv-01539, 2024 WL 175743, at *1 (N.D. Ill. Jan. 4, 2024); *Pavelka*, 2023 WL 3728199, at *3; *Osidi v. Assurance IQ, LLC*, No. 21-cv-11320-ADB, 2022 WL 623733, at *2 (D. Mass. Mar. 3, 2022); *Akselrod v. MarketPro Homebuyers LLC*, No. CCB-20-2966, 2021 WL 100666, at *2 (D. Md. Jan. 12, 2021); *Newell v. Aliera Healthcare, Inc.*, No. 1:19-cv-01489-SCJ, 2020 WL 13568762, at *3 (N.D. Ga. Apr. 6, 2020); *Katz v. Liberty Power Corp., LLC*, No. 18-cv-10506-ADB, 2019 WL 957129, at *2 (D. Mass. Feb. 27, 2019); *Leschinsky v. Inter-Continental Hotels Corp.*, No. 8:15-CV-1470-T-30MAP, 2015 WL 6150888, at *2 (M.D. Fla. Oct. 15, 2015). Courts granting such motions have acknowledged the indisputable fact that

"discovery in class actions is expensive and asymmetric, with defendants bearing most of the burdens." *Babare v. Sigue Corp.*, No. C20-0894-JCC, 2020 WL 8617424, at *2 (W.D. Wash. Sept. 30, 2020). This recognition accords with the directive set forth in Federal Rule of Civil Procedure 1, which requires that the Rules be construed and administered "to secure the just, speedy, and inexpensive determination of every action and proceeding."

"The decision to bifurcate discovery in putative class actions prior to certification is committed to the discretion of the trial court." *True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-cv-02219-JST, 2015 WL 273188, at *1 (N.D. Cal. Jan. 20, 2015). Class certification requires the court to be "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (quotation omitted). To certify a class under Rule 23(b)(3), a plaintiff must establish that common questions predominate and that a class action is superior to other available methods of adjudication. The class determination often "involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal-Mart Stores, Inc.*, 564 U.S. at 351); *see also Klassen*, 2023 WL 5497865, at *3 (recognizing that "the distinction between class certification and merits discovery is murky at best and impossible to determine at worst," which can result in "petty fights over what constitutes merits discovery versus class discovery").

**B. Protective Orders**

The scope of discovery under the Federal Rules is broad but not unlimited. Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information,

5

the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The court is responsible for managing discovery to ensure it remains proportional to these considerations. *Id.*; *see also* Fed. R. Civ. P. 26(b), advisory committee's notes to 2015 amendment (recognizing that, after the 2015 amendments to Rule 26, "[t]he parties *and the court* have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes") (emphasis added).

Rule 26(c)(1) authorizes the court, "for good cause," to issue an order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense," including by forbidding discovery, limiting its scope, or prescribing a different discovery method. Fed. R. Civ. P. 26(c)(1). The party seeking a protective order bears the burden of demonstrating good cause. *GSL Grp. Inc. v. Travelers Indem. Co.*, No. 18-cv-00746-MSK-SKC, 2020 WL 12813087, at *2 (D. Colo. May 27, 2020). To demonstrate good cause, the moving party must submit "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *In re HCP Sys., LLC*, 619 B.R. 479, 485 (Bankr. D.N.M. 2020) (quoting *Pia v. Supernova Media, Inc.*, 275 F.R.D. 559, 560 (D. Utah 2011)); *accord, e.g.*, *DiCesare v. Makinson*, No. 21-CV-231-RAW, 2024 WL 3066035, at *1 (E.D. Okla. June 20, 2024) (the moving "party must present concrete reasons justifying a protective order and not rest on unverified fears"); *Prime Ins. Co. v. Medicab Transp., LLC*, No. 2:24-cv-421-SPC-KCD, 2024 WL 4695876, at *2 (M.D. Fla. Nov. 6, 2024) ("The party requesting a protective order must make a specific demonstration of facts in support of the request, rather than conclusory or

6

speculative statements about the need for a protective order and the harm which will be suffered without one.") (quotation omitted).

### III.  ANALYSIS

#### A.  Motion to Bifurcate Discovery (ECF No. 14)

The court begins by identifying the issue that drives the bifurcation analysis. Here, there is a discrete, potentially dispositive question that is appropriately addressed in an initial phase of discovery: whether Plaintiff consented to receive the challenged text messages. *See Ragsdale v. Harmony Leads, Inc.*, No. 1:24-cv-02510-CNS-SBP, 2025 WL 1617233, at *2 (D. Colo. May 9, 2025) (bifurcating discovery where narrow, potentially dispositive issues concerning the named plaintiffs' individual TCPA claims could be resolved before class discovery).

BioTrust has proffered records and testimony that, if credited, would show that Plaintiff made an online purchase from BioTrust in September 2020, entered her telephone number during checkout, affirmatively toggled a consent control to receive SMS marketing messages, and remained subscribed until late 2024. *See* ECF No. 14 at 3-4; *see also* Declaration of Brian Rosin, ECF No. 14-1 ¶¶ 2-4 (explaining review of BioTrust's consumer purchase data for Peggy Banks). Plaintiff disputes that she consented and states that she has no recollection of checking any "box" indicating her consent to receiving text messages from BioTrust. *See* Declaration of Peggy Banks, ECF No. 23-1 ¶¶ 8-9. She does not dispute, however, that the central factual conflict concerns what she did or did not do in connection with the alleged 2020 transaction and how BioTrust's systems recorded that interaction. *See* ECF No. 23 at 6–7.

Consent, if established, would constitute a complete defense to Plaintiff's TCPA claim and would undercut her ability to aver that she is "typical" of others such that she can adequately

represent the putative "National DNC Class," which is predicated on unsolicited telemarketing to individuals who did not invite or permit such communications. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017) ("The district court correctly stated that prior express consent is a complete defense to Van Patten's TCPA claim."); *Cameron v. CHW Grp., Inc.*, No. 2:23-cv-00320-HCN-DBP, 2025 WL 2336513, at *2-3 (D. Utah Aug. 13, 2025) (recognizing that TCPA claims present unique issues, including the class representative's consent, that have prompted courts to "recognize[] the efficiencies of bifurcated discovery in TCPA class actions"). If the court ultimately finds that Plaintiff consented, there will be no need to undertake class-wide discovery into other customers, other campaigns, or BioTrust's general telemarketing practices. If, by contrast, the court finds that Plaintiff did not consent, or that BioTrust's consent records as to her are unreliable, the case may proceed and broader discovery may then be appropriate to determine whether similar issues affected other consumers. The court emphasizes that it does not resolve this factual dispute at this stage. Rather, the question is one of sequencing and proportionality: whether discovery should proceed immediately into expansive, nation- and class-wide issues, or whether it first should focus on a narrow, plaintiff-specific question whose resolution may determine whether the case can proceed at all.

In this context, the court finds that the overlap between the discovery necessary to resolve the questions specific to Plaintiff, including the threshold issue of consent, are sufficiently limited to justify bifurcation. *See Pavelka*, 2023 WL 3728199, at *2; *see also Cameron*, 2025 WL 2336513, at *3 (finding "enough separation between class discovery and individual discovery" in a TCPA action "to warrant bifurcation"). The core consent questions—what Plaintiff saw and did on BioTrust's website in 2020, how consent was presented and captured,

how her consent status was stored over time, and how her phone number entered the 2024 BioTrust marketing campaigns—can largely be answered by reference to records and systems concerning Plaintiff and the campaigns that actually contacted her. *See Cameron*, 2025 WL 2336513, at *3 (finding that the "narrow, potentially dispositive, issues" in TCPA cases— including "whether Plaintiff consented to the calls, whether his particular number is registered on the National DNC Registry, whether Plaintiff is a 'residential telephone subscriber', and whether Plaintiff received telephone solicitations that fall within the TCPA"—"present a unique opportunity that warrants bifurcated discovery due to those cost savings").

These topics can be explored without immediately compelling the production of nationwide customer lists, complaint files, or multi-year dialing logs involving nonparties.[2] *See, e.g.*, *Akselrod*, 2021 WL 100666, at *2 (bifurcating discovery in TCPA case after concluding that "whether an [automatic telephone dialing system] was used and whether messages were telephone solicitations are issues of liability largely distinct from class certification issues"); *Newell*, 2020 WL 13568762 ("Because consent is a dispositive issue, as with the [automatic telephone dialing system] issue, limited discovery on how [Defendant] acquired Plaintiff's contact information and whether that acquisition constitutes consent under the TCPA has the potential to save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery") (internal quotation marks and quotation omitted);

---

[2] To the extent some information may be required to interpret Plaintiff's records and the context of the BioTrust campaigns that sent her messages, this Order should not be read to prohibit a limited amount of narrowly-focused contextual discovery of this type. However, the court will not require BioTrust to open the door to broad class-wide discovery before the threshold issue of consent is resolved.

9

*Physicians Healthsource, Inc. v. Janssen Pharm, Inc.*, Civil Action No. 12-2132 (FLW), 2014 WL 413534, at *4-5 (D.N.J. Feb. 4, 2014) (bifurcating discovery in TCPA fax case based on a narrow, potentially dispositive issue that was distinct from class issues). Thus, this is not a case where the proposed limited discovery overlaps substantially with class discovery.

The same considerations support the court's conclusion that bifurcation promotes judicial economy and facilitates an efficient litigation process that is in the interest of the parties. *See Pavelka*, 2023 WL 3728199, at *2. Limited discovery concerning how BioTrust discovered Plaintiff's contact information—and whether that acquisition amounts to consent under the TCPA—may save the parties the substantial costs associated with sweeping class discovery and the need for the court to determine the class-certification question. *See, e.g.*, *Harris v. Shore Funding Sols. Inc.*, No. 23-CV-00789 (JMA) (JMW), 2023 WL 3440077, at *4 (E.D.N.Y. Apr. 21, 2023) (recognizing, in a TCPA case, that "limited discovery here has the potential to save the parties from the costs resulting from class action discovery, which can involve hefty litigation expenses and an extensive use of judicial resources") (internal quotation marks and quotation omitted). If Plaintiff's claim fails on the consent issue, BioTrust intends to initiate dispositive-motion practice. *See* ECF No. 14 at 5 ("Because consent is a complete defense under the TCPA, BioTrust intends to file an early motion for summary judgment establishing that Plaintiff consented to receive the very text messages she complains of.") (citations omitted). If BioTrust prevails on that motion, the matter is brought to an end in an efficient way. Conversely, if Plaintiff's claim survives the threshold discovery phase, the court can then structure the second phase of a discovery plan informed by the specific issues that remain and targeted to those considerations.

Finally, the court finds that bifurcation visits no substantial prejudice on Plaintiff where the resolution of the single issue of consent may resolve the case entirely and render trial on any other issue wholly unnecessary. *See Pavelka*, 2023 WL 3728199, at *2. If Plaintiff consented to the calls at issue, she has neither a viable claim nor a right to serve as a class representative in the first instance. She suffers no compromise to her rights by having that determination made at an earlier phase of the case. And the court finds that any prejudice to Plaintiff is significantly outweighed by the formidable burdens and costs attendant on potentially unnecessary class-action discovery. Denying bifurcation would require BioTrust to undertake broad, expensive discovery—much of it involving nonparty data—in a case where the initiating party may have no viable claim. But if discovery is bifurcated, Plaintiff will receive the discovery she needs to test BioTrust's consent defense, including discovery directed to her own transaction, the consent mechanisms at issue, and the treatment of her telephone number in the relevant campaigns. *See Ragsdale*, 2025 WL 1617233, at *2.

Any potential prejudice to Plaintiff is further mitigated by the fact that BioTrust remains subject to its preservation obligations, and Plaintiff will receive class-wide discovery if her individual claim survives the first phase of discovery. On balance, then, considering both the burden on BioTrust and the limited risk of prejudice to Plaintiff at this stage of the proceedings, the risk of prejudice to the defending party favors bifurcation.

For these reasons, the court finds that bifurcation of discovery is warranted. Sequencing discovery to address the threshold issue of Plaintiff's consent before requiring broad class-wide discovery promotes proportionality, judicial economy, and the efficient resolution of this action, while preserving Plaintiff's ability to pursue class claims if her individual claim survives.

Accordingly, BioTrust's Motion to Bifurcate Discovery (ECF No. 14) is **GRANTED** and to discovery shall proceed in two phases, with the first phase ("Phase One") focused on Plaintiff's individual TCPA claim and the issue of consent and the second phase ("Phase Two" addressing class issues and broader merits discovery only if necessary.

### B. Motion for Protective Order

BioTrust seeks a protective order under Rule 26(c) limiting the initial discovery phase to an exploration of the threshold issues relating to Plaintiff's individual claim—principally, whether Plaintiff consented to receive the challenged text messages—and deferring broader discovery pending resolution of that issue. *See generally* ECF No. 15. For the reasons articulated above, the court concludes that BioTrust has shown good cause for a limited, phased approach, but the court stops short of imposing the categorical restrictions on restrictions on discovery BioTrust proposes. *See* ECF No. 15-3 at 1 (in proposed protective order, stating that the initial phase of discovery shall be "limited to (a) information evidencing Plaintiff's purchase(s) from BioTrust and any consent to receive text messages given by Plaintiff; (b) documents and information sufficient to show Plaintiff's opt-out or unsubscribe status; and (c) any additional discovery mutually agreed upon by the parties in writing").

Plaintiff's first set of discovery requests sweeps far beyond the core dispute of consent. As written, the requests seek nationwide and multi-year customer and campaign data, insurance and indemnity materials, generalized telemarketing policies, complaint records, and discovery directed to Rule 23 certification issues. *See* ECF No. 15-2 at 2-20. Plaintiff contends that this broad, class-wide discovery is necessary because her theory of liability rests on "systemic" conduct by BioTrust, which she conjectures is a type of "'win-back' campaign or a mass upload

12

of customer data without corresponding consent data to a text messaging platform" that would affect all putative class members, "rather than an isolated, consent-based communication." ECF No. 23 at 2 & *passim*. The court does not resolve the merits of Plaintiff's theory at this stage. But even accepting Plaintiff's framing, the factual predicates for that theory necessarily intersects with questions particular to *Plaintiff's* conduct: how her phone number entered BioTrust's systems, how any consent (or lack thereof) was recorded, and how her number was selected for the campaigns that sent the challenged messages.

  Viewing Plaintiff's broad discovery requests in this context, the court finds that requiring full responses at the outset would impose substantial and unnecessary burden and expense on BioTrust by obliged it to undertake company-wide collection of data and information concerning third-party vendor involvement before the court has determined whether Plaintiff's individual claim survives the threshold issue of consent. At this stage, the court finds that the likely benefit of such large-scale discovery is limited when weighed against its cost. *See* Fed. R. Civ. P. 26(b)(1). However, while the court declines to permit immediate, unrestricted class-wide discovery, it also declines to adopt BioTrust's proposed relief to the extent it would operate as a categorical bar on discovery reasonably necessary for Plaintiff to test BioTrust's consent defense. The dispositive inquiry turns not only on what *Plaintiff* encountered during the checkout process, but also on how BioTrust's systems recorded, retained, and later utilized that information. Plaintiff is therefore entitled to discovery sufficient to evaluate, explain, and challenge the reliability of the records specific to her purported consent, including the mechanisms by which her number came to be included in the texting campaigns at issue.

Accordingly, the court limits Phase One discovery to that discovery reasonably necessary to address the following topics:

(a) **Plaintiff's alleged transaction(s)** with BioTrust, including documents and information sufficient to show the purchase date(s), product(s), checkout information submitted (including the phone number captured), and any associated account identifiers.

(b) **Consent presentation and capture** as applicable to Plaintiff's alleged transaction(s), including documents and information sufficient to show the checkout workflow and the disclosures and opt-in mechanisms presented to Plaintiff, and how any opt-in choice was recorded in BioTrust's systems.

(c) **Plaintiff's opt-in/opt-out history**, including documents and information sufficient to show Plaintiff's subscription status over time (including any unsubscribe or stop requests) and when and how any change occurred.

(d) **The challenged messages** to Plaintiff, including documents and information sufficient to show the date(s), time(s), content, sending identifier(s) (including any shortcode or longcode), and any internal identifiers or records reflecting messages sent to Plaintiff.

(e) **Campaign inclusion pathway**, including documents and information sufficient to show how Plaintiff's number was selected for, loaded into, and contacted through the campaign(s) that generated the challenged messages, and how Plaintiff's consent status was evaluated or applied for those campaign(s).

(f) **Limited systems and process context** reasonably necessary to explain and authenticate Plaintiff-specific records and the operation of the relevant campaign(s), including limited descriptions of relevant database fields, record types, or processing logic as applied to Plaintiff and the campaign(s) at issue.

Broader discovery implicating class-wide issues—including information about nationwide customer lists or datasets, dialing or texting logs for nonparties, generalized complaint records or files from other customers, insurance or indemnity agreements, compliance materials not tied to the Phase One issues, or discovery directed solely to Rule 23 certification issues—will be deferred. This tailored approach protects BioTrust from the undue burden of premature, expansive discovery, while preserving Plaintiff's ability to meaningfully test BioTrust's threshold defense and to develop her factual theories as they relate to her own claim.

The following additional parameters shall govern the course of Phase One:

BioTrust shall respond to Plaintiff's first set of written discovery served June 3, 2025, only to the extent the requests seek information within the Phase One scope described above. . BioTrust may raise any otherwise applicable objections, including objections based on privilege and confidentiality. To the extent Plaintiff's June 3, 2025 discovery requests seek information outside the scope of Phase One, BioTrust is not required to respond.

BioTrust's responses to the June 3, 2025 discovery requests shall be due **within thirty (30) days of the date of this Order**, unless the parties stipulate otherwise

During Phase One, each side may take up to **two (2) depositions**, including depositions pursuant to Federal Rule of Civil Procedure 30(b)(6), limited to the above-referenced Phase One topics.

15

The parties must **meet and confer** in good faith before presenting any dispute regarding whether a discovery request falls within Phase One or the sufficiency of a Phase One response. Any remaining disputes shall be presented in accordance with D.C.COLO.LCivR 7.1 and the undersigned's practice standards.

Phase One discovery shall be completed within **one hundred twenty (120) days of the date of this Order**.

**Within thirty (30) days after Phase One discovery closes**, Defendant may file any dispositive motion directed to Plaintiff's individual claim. If such a motion is filed, Phase Two discovery shall remain deferred pending resolution of that motion unless the court orders otherwise. If Plaintiff's individual claims are allowed to proceed after the resolution of any dispositive motion upon the completion of Phase One, the court will set, or direct the parties to propose, a Phase Two schedule addressing class and broader merits discovery and any class certification deadline.

### IV.   CONCLUSION

Consistent with foregoing, it respectfully **ORDERED** that the Motion to Bifurcate Discovery (ECF No. 14) is **GRANTED**, and the Motion for Protective Order (ECF No. 15) is **GRANTED IN PART**.[3]

---

[3] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir.

DATED: January 20, 2026               BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").